STATE of Tennessee, ex rel. The COMMISSIONER OF the DEPARTMENT OF TRANSPORTATION, Petitioner–Appellant,

v.

Mariclare Crenshaw WILLIAMS and husband, James A. Williams; Mable Crenshaw Leath and husband, Leroy Leath; City of Gallatin, Tennessee; Sumner County, Tennessee, Defendants–Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

July 17, 1991.

Permission to Appeal Denied by
Supreme Court Jan. 6, 1992.

Charles W. Burson, Atty. Gen. and Reporter and L. Vincent Williams, Asst. Atty. Gen., Nashville, for petitioner-appellant.

Nathan Harsh, Harsh, Kelly & Smith, Gallatin, for defendants-appellees.

## OPINION

FRANKS, Judge.

In this action the state, through its power of eminent domain, took .233 acres of plaintiffs' .7 acre unimproved tract of land in Sumner County to construct a road and deposited $78,600.00 with the court. In the resulting trial, the jury returned a verdict of $33,333.33 for the land taken and $63,333.34 for incidental damages to the remainder.

The state has appealed and raised numerous issues. The state insists any one of the following constitutes reversible error:

A. The admission of proof on potential commercial use in the face of zoning and deed restrictions.

B. The admission of expert opinion testimony of Carman and Cassetty charging it was based on speculation and hearsay as to the change in the area from residential to commercial.

C. Admission of rebuttal proof on whether the neighborhood residents would enforce the deed restrictions.

D. Admission of Judge Ernest Pellegrin's testimony as a rebuttal witness as he had been present in the courtroom during the trial of the case.

E. Admission of the expert testimony of Balthrop given his drastically altered appraisal and the state's late decision · not to call him as a witness.

F. The comments by the trial judge in the presence of the jury in referring to the zoning restrictions as "ancient" or "archaic".

The property is zoned residential [1] and the deed contains a restrictive covenant prohibiting commercial use but the evidentiary record is replete with testimony that the character of the area has changed dramatically since the restrictive covenants were put in place and extensive commercial developments are in the immediate vicinity of the tract.

At trial, the owners offered three different opinions as to the value of their land. Mariclare Williams, a joint owner, testified to a value of $198,000.00 on the date of the taking and a real estate broker and appraiser, Gene Carman, testified that since the transition to commercial development had caused land prices in the area to "soar", he opined it was proper to take into account commercial sales in the area to establish the value of the property. He stated at the time of the taking the entire tract had a value of $173,600.00 and the part taking should be compensated at

---

1. The record establishes that the property has been put to limited commercial use for a number of years.

$168,600.00 and the remainder, to which the owners effectively would have no access, at $5,000.00. Realty appraiser and auctioneer, Jimmy Parks Cassetty, also relied upon commercial sales in the area. He valued the .7/10ths acre tract at $200,-000.00 before the taking and opined that the remainder, after the taking, would sustain incidental damages of $127,820.00 and the property taken had a value of $66,-573.00, for total damages in the amount of $194,393.00. Over the state's objection, Cassetty testified that given the commercial development in the area and the results of his informal polling of neighbors as to the likelihood of enforcing the restrictive covenants, that a willing, knowledgeable, informed purchaser would purchase the property for potential commercial development.

The state's proof focused on the current zoning and the import of the deed restrictions. Its appraiser, Lewis Garber, initially valued the land based on its potential for commercial development at $75,000.00. Later, upon becoming aware of the deed restrictions, he altered his appraisal valuing the part taken at $7,000.00 and incidental damages to the remainder of $14,000.00, for a total value of $21,000.00.

As a counter to the landowner's theory, the state offered the Gallatin City Planner, Ted Clark, who testified he would not, at the time of taking, have recommended rezoning the tract from residential to commercial.

Preston Balthrop, a state appraiser, listed as a state's witness, appraised the disputed tract three times. In the first two appraisals he considered the tract as potential commercial property and found that the property taken was worth $27,060.00 and that incidental damages to the remainder were $51,524.00 for a total of $78,584.00. On learning of the deed restriction shortly before trial, this witness also altered his appraisal to $4,481.00 for the land taken and $8,532.00 for incidental damages to the remainder, for a total of $13,013.00.

The state elected not to call Balthrop as a witness and when the landowners sought to read Balthrop's discovery deposition the trial judge offered the state two options: it could call Balthrop as a witness, who would be permitted to explain his change in values, or the owners could call Balthrop as a rebuttal witness. The state elected the first option and the owners were allowed to examine Balthrop on his revised opinion.

In rebuttal the owners offered proof from area residents who said they would not oppose lifting the restrictive covenants to allow commercial use of the tract. On cross-examination, several of the witnesses admitted their property with restrictions had also been taken by the state.

■ Taking into account the potential for commercial uses by the experts in arriving at opinion of value was not error. *Shelby Co. v. Mid–South Title Co., Inc.*, 615 S.W.2d 677 (Tenn.App.1980). The court's objective in an eminent domain proceeding is to award just compensation for the taking to the landowner. *Love v. Smith*, 566 S.W.2d 876 (Tenn.1978). The market value of the land taken is the price which would be paid by a willing buyer from a willing seller at the time the land was taken considering all of its potential uses. *Shelby County*. In determining fair market value, the trier of fact should consider all uses to which the property might be reasonably put at the time of the taking. *See id.* The highest and best use may be considered in fixing values so long as it is not the sole measure, *see Love*, 566 S.W.2d at 878; *Layne v. Speight*, 529 S.W.2d 209 (Tenn.1975).

■ Present zoning is but one of many factors to be considered in valuing the land taken. *Shelby County*, 615 S.W.2d at 680. Zoning is not dispositive because zoning changes may be made reflecting the changing needs and circumstances of the community. *See State ex rel. Com'r D.O.T., v. Veglio*, 786 S.W.2d 944 (Tenn.App.1989). The same rule obtains where the landowner's deed contains restrictions. *See* 4 A.L.R.2d 1111, *Restrictions—Change in Neighborhood* and A.L.R.2d *Later Case Service*.

■ Where the state's experts and the landowner's experts disagree as to whether the land taken has probable commercial use

based on potential rezoning, the likelihood of commercial zoning and its impact on value are questions for the jury. *Shelby Co.,* 615 S.W.2d at 680. In the instant case, virtually all of the witnesses had initially believed that the change in the character of the neighborhood meant that the land should be appraised at its potential commercial value. Both of the state's experts originally valued the tract based on potential change in rezoning. It was not until they learned of the deed restriction on commercial use did the state's witnesses change their opinions. In rebuttal, the landowners' proof indicated that adjoining property owners would not enforce the restrictions; indeed, on cross-examination, some of the neighbors acknowledged that their property had also been condemned. While intended to show bias, the testimony demonstrates that it was unlikely for the neighbors to enforce restrictions that could diminish the value of their own land.

■ Under the rationale of *Shelby County,* admission of testimony as to potential for commercial development and use was proper. The court's charge instructed the jury to consider all the evidence that tended to increase or diminish the value of the property, including the deed restrictions. In this connection, it was error for the judge to pose to the jury whether the restrictive covenants in the deeds run with the land; however, it was harmless error since there was substantial evidence that the restrictions would not be enforced or could reasonably be removed by court action.

■ The objection that the defendants' experts' testimony was too speculative is without merit because, as stated, the potential for commercial use of the property is a factor and factual issue to be considered by the jury in arriving at the value of the property. The state's experts looked to comparable residential sales and the jury was properly instructed on how to calculate fair market value and incidental damages. Moreover, the basis of an expert's opinion need not be admitted as evidence. Tenn. R. Evid. 703; Paine, *Tennessee Law of Evidence* §§ 703.1 to 703.3 (1990). Such underlying facts are not admissible unless they satisfy all other evidentiary rules, including the rules on hearsay. Paine at § 703.3. The state argues that Cassetty's disclosure that some neighbors told him they would not enforce the restrictions is inadmissible hearsay and this evidence was erroneously admitted; however, the error was harmless because the landowners' neighbors testified directly as rebuttal witnesses on this point and were subject to cross-examination.

■ The state argues the trial court abused its discretion by allowing the landowners to offer rebuttal witnesses' testimony that they would not enforce the residential restrictions in the deeds. Whether rebuttal evidence is admitted is a matter for the trial court's discretion. *See Coates v. Thompson,* 666 S.W.2d 69 (Tenn.App. 1983); 29 Am.Jur.2d *Evidence* § 269. The fact the rebutting party might have offered the evidence in its case-in-chief does not render it admissible. *Id.* 29 Am.Jur.2d *Evidence* § 250 states:

> When the party holding the negative of an issue, who is usually the defendant, has put in his whole case, the party who first put in his evidence may then put in rebutting evidence. Rebutting evidence is that which is given to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not merely evidence which contradicts the witnesses on the opposite side and corroborates those of the party who began, but also, evidence in denial of any affirmative fact which the answering party has endeavoured to prove.

In this case, the state placed the impact of the restrictive covenants on the property's value at issue in its proof and admission of the landowners' rebuttal evidence was not an abuse of discretion.

■ At trial, the state objected to the landowners' use of Judge Pellegrin's testimony because he was present in the courtroom in violation of the Rule of Sequestration. Tenn.R.Evid. 615. The Rule applies to rebuttal witnesses but the trial

judge has wide discretion in determining whether to exclude a witness suspected of violating the Rule. *State v. Moffett*, 729 S.W.2d 679 (Tenn.Cr.App.1986); Paine § 615.5. While Judge Pellegrin remained in the courtroom during much of the trial, the trial judge allowed Pellegrin to testify, because Pellegrin as an officer of the court would be presumed not to alter his testimony based upon what he had heard. Given the mandatory language of Tenn.R.Evid. 615, it was an abuse of discretion for the trial judge to admit Pellegrin's testimony; however, the error was harmless because other rebuttal witnesses gave essentially the same testimony as landowners similarly situated.

As to the admission of Balthrop's testimony, Balthrop first considered the tract as potential commercial property and valued the taking at over $78,000.00. The trial court's pre-trial order required the parties to send the judge their expert appraisals by April 12, 1990 and the final evaluations, based upon comparable sales were to be exchanged no later than April 16. At 4:30 p.m. on the afternoon before trial, the landowners' counsel first learned that Balthrop planned to testify to a value of $13,000.00 based upon the residential restrictions in the deed. As a result of these belated developments, Balthrop was eventually called as a state's witness who gave both appraisals and was cross-examined.

The state argues that Balthrop's testimony shifted the burden of proof to the state and created a prejudicial inference that it was suppressing evidence by not calling its own witness.

 The burden to show the value of taking is on the landowner. *See Town of Erin v. Brooks*, 190 Tenn. 407, 230 S.W.2d 397 (1950). The testimony of the state's witness did not shift the burden to the state. The state's other appraiser, Gerber, similarly testified that he lowered his original appraisal after learning about the deed restrictions, which evidence had been offered by the state but it is not contended that Gerber's testimony shifted the burden of proof.

In *State ex rel. Smith v. Wilkinson–Snowden–McGehee*, 571 S.W.2d 842 (Tenn. App.1978), the state, in a condemnation action, elected not to offer the testimony of an expert making an appraisal at the state's behest. The landowners then employed the expert and relied on the appraisal at trial. We held that it was reversible error for the landowners' counsel to expose their prior relationship to the jury as it was irrelevant and prejudicial. *Wilkinson* is distinguishable on that basis. Had the landowners exposed Balthrop's relationship by calling him as their witness, *Wilkinson* would apply but under the procedure employed by the trial judge the state was required to abide by its pre-trial order and offer Balthrop as a state's witness. It is disingenuous to argue that requiring the state to comply with the representations it had made to the court in effect made Balthrop the "court's" witness.

Finally, the state takes issue with the court's questions of witnesses and comments. During Carman's testimony, the trial judge engaged in the following colloquy with Carman and the state's counsel:

> *The Court:* The big point is this, Mr. Carman, and they're not going to ask it, but I'm going to ask you, isn't it a common occurrence that zoning is changed and also these ancient or archaic restrictions are eliminated, is that correct?
>
> *The Witness:* Yes, sir, that's correct.
>
> *The Court:* It does cause a problem, of course, doesn't it?
>
> *The Witness:* Yes, sir.
>
> *Gen. Williams:* Excuse me, your honor, I don't do this very often, but your honor is asking questions that I don't know that this witness—I think you're asking him his opinion, but I'm just being cautious.
>
> *The Court:* Well, what I'm getting at, Mr. Carman, is that done?
>
> *The Witness:* Yes, sir, that's done.
>
> *The Court:* But it does cause a problem, and it causes expense and things of that nature, is that right?
>
> *The Witness:* That's correct.

The record does not demonstrate, nor do the parties claim, that any other objection was made to the judge's question. During a bench conference, the judge advised counsel that he believed his comments may have been improper and required a curative instruction. In his charge, the judge did not re-emphasize this part of the testimony but said that he had no personal interest or opinion as to what the outcome should be.

 Although Tenn.R.Evid. 614 contains no restriction on court interrogation of witnesses, pre–Rule common law and the advisory comment treat the issue. Paine § 614.2. A judge may have a duty to ask questions in order to clarify issues for the jury but exercise of this jurisprudential tool must be tempered by prudence. Before a jury, a trial judge's comments should be cautious and circumspect. The extent to which the judge may make comments and remarks during a trial before a jury is governed by the fundamental principle that a judge should say or do nothing to prejudice the rights of the parties. 75 Am. Jur.2d *Trial* § 91. Although Rule 614(c) allows counsel to postpone objection to a judge's comments until out of the jury's presence, commentators have stressed that the rule does not eliminate the need for an objection to preserve the issue for appellate review. Paine, § 614.3.

In this case, the state is not objecting to the trial judge's interrogation of the witnesses but objects to the words employed; *i.e.*, "ancient" and "archaic" to describe the restrictions, but the record does not establish that the state properly objected to the use of this language. However, in our view the judge should not have employed this language in his question but we consider its effect to be harmless in view of the evidence in the record before us.

 Finally, we conclude there is material evidence to support the verdict that was approved-by-the trial judge. The findings of the jury fall near mid-range of the experts' opinions and a verdict rendered by a jury, which has been approved by the trial judge, will not be lightly upset by this court. *Tallent v. Fox*, 24 Tenn.App. 96,

141 S.W.2d 485 (1940), as cited in *Shelby County*, 615 S.W.2d at 680–81.

We have considered the remaining issues and find them to be without merit. We affirm the judgment of the trial court and remand with cost of the appeal assessed to the appellant.

CANTRELL and KOCH, JJ., concur.