IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 22, 2003 Session

# SEVIER COUNTY, TENNESSEE v. JOHN B. WATERS, TRUSTEE, ET AL.

Appeal from the Circuit Court for Sevier County
No. 88-582-I     Ben W. Hooper, II, Judge

FILED AUGUST 27, 2003

No. E2002-02309-COA-R3-CV

This is a land condemnation case. On November 18, 1988, Sevier County ("the County") filed a petition for condemnation seeking to condemn property in the county for a new jail. The petition was tried to a jury some 13 plus years later, on June 19 and 20, 2002. The jury awarded compensation of $335,500. This verdict was $158,500 more than the amount deposited in court by the County. The trial court entered judgment on the jury's verdict; the trial court supplemented the award by an award of pre-judgment interest of $267,468.75 and decreed that the total judgment of $425,968.75[1] would accrue interest at the rate of 10% per annum. The County appeals, arguing (1) that the trial court erred in excluding evidence pertaining to a controversy over the ownership of the property; (2) that pre-judgment interest is discretionary with the court and that the court below should have considered the disputes among the property owners as a factor impacting the delay in getting this matter to trial; (3) that the trial court erred in the way it calculated pre-judgment interest; and (4) that the trial court erred in decreeing that the judgment of $425,968.75 would accrue post-judgment interest at the rate of 10% per annum. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

George R. Garrison, Sevierville, Tennessee, for the appellant, Sevier County, Tennessee.

John B. Waters III and Garrett P. Swartwood, Knoxville, Tennessee, for the appellees, John B,. Waters, Jr., Trustee, Mary Louise Hailey, Trustee, and Citizens Real Estate & Loan Company, Inc.

**OPINION**

---

[1]This amount is in addition to the deposit of $177,000.

I.

The petition for condemnation named numerous defendants. Among other things, the County alleged that

> [t]he said Defendant owners are in disagreement as to the ownership of a portion of the property described in Exhibit 1 which dispute cannot be resolved by the Petitioner; and the Petitioner therefore, has named them all as necessary parties in order to acquire the interests of all of them through this condemnation action.

The "disagreement" is not otherwise mentioned or alluded to in the petition. There is no allegation in the petition reciting how this disagreement impacts the taking claim set forth in the pleading; nor is there any allegation in the petition that the dispute may impede the County's ability to move forward with its claim.

On December 20, 1988, two of the defendants – John B. Waters, Jr. and Mary Louise W. Hailey, Trustees of the John B. Waters, Sr. Testamentary Trust ("the Trustees") – filed their answer, admitting that the County had the authority to condemn the property. The answer acknowledges that there was a dispute as to the ownership of "a small part of the property." The answer goes on to allege that "the matter of the ownership of the disputed portion will be resolved between the parties and will not be in any way involved in this lawsuit."

On the day the foregoing answer was filed – December 20, 1988 – the trial court entered a "Writ of Possession and Agreed Order for Withdrawal of Deposit."

By two orders entered three years later, on December 20, 1991, the various defendants acknowledged – and the trial court ordered – that all ownership disputes had been settled by the terms of which all monies due for the taking of the property were to be paid to the Trustees. The next papers in the record are the interrogatories of the County filed October 4, 1995, almost seven years after the entry of the writ of possession and nearly four years after the order reciting that the disputes between the property owners had been settled.

II.

A.

The long delay between the filing of the petition/entry of the writ of possession, on the one hand, and the trial, on the other, prompts two of the issues raised by the County. Before examining the propriety of the awards of pre-judgment and post-judgment interest, we will first address these "delay-related" issues.

B.

Prior to trial, the Trustees filed a motion in limine. As noted in the County's brief, the motion "s[ought] to exclude any evidence regarding the dispute as to ownership of the property and of the ownership interest in each of the separate tracts." The motion – filed on May 29, 2002 – was granted. The County argues that the disputes among the various defendants as to the ownership of a small[2] portion of the property impact the issue of value and that it should have been allowed to present this evidence to the jury. We disagree.

The only issue before the jury was the value of the condemned property as of the date of taking, *i.e.*, December 20, 1988. "The court's objective in an eminent domain proceeding is to award just compensation for the taking to the landowner." *State ex rel. Com'r v. Williams*, 828 S.W.2d 397, 400 (Tenn. Ct. App. 1991). In *Nashville Housing Authority v. Cohen*, 541 S.W.2d 947 (Tenn. 1976), the Supreme Court expounded on this concept:

> The "just compensation" constitutionally required is the fair cash market value on the date of taking of the property for public use. The fair market value of the land is the price that a reasonable buyer would give if he were willing to, but did not have to, purchase and that a willing seller would take if he were willing to, but did not have to, sell. In determining what constitutes fair market value, the rule in Tennessee has long been stated to be that the jury must consider all capabilities of the property and all the legitimate uses for which it is available and reasonably adapted.

*Id*. at 950 (citations omitted).

In *State ex rel. Comm'r v. Brandon*, 898 S.W.2d 224 (Tenn. Ct. App. 1994), a case relied upon by the County, the trial court refused to allow the condemning authority to prove property contamination resulting from a long history of the use of petroleum products at the site. *Id*. at 225. The trial court also refused to allow the authority to prove the cost of remediation. *Id*. In reversing the lower court, we held that the jury should have been allowed to hear the evidence in question. *Id*. at 228. We quoted with approval from opinions of appellate courts in the State of Florida, including the following:

> [C]haracteristics of the condemned property are the things of which a real estate expert's opinion is made. They are the factors which influence a purchaser in determining how much to pay for a piece of property. Some of those characteristics are fear generated by high

---

[2]The County contends that the disputed ownership related to 25% of the condemned property; the Trustees contend that the disagreements only related to 11% of the property.

voltage electric transmission lines, contamination of property by gasoline hydrocarbon, and toxic waste of all kinds.

Thus, the evidence which DOT attempted to offer relative to the contamination of the property and the cost of remediation was relevant to the value of the property on the date of taking, but it was also relevant regarding the effect which the stigma of contamination would have on its market value in the mind of the buying public.

*Id*. (quoting *State Dep't of Transp. v. Finkelstein*, 629 So. 2d 932, 934 (Fla. Dist. Ct. App. 1993)).

*Brandon* addresses a condition on the land that clearly impacts the willing buyer/willing seller standard. *Id*. at 227. However, there is nothing about that *hypothetical* standard to suggest that multiple owners and disputes among them as to who owns what is something that affects the property's "capabilities" and "all the legitimate uses for which it is available and reasonably adapted." *Nashville Housing Authority*, 541 S.W.2d at 950. While these issues certainly impact who gets what in terms of money, they were not relevant to the value issue before the jury.

This issue is found adverse to the County.

C.

The subject of interest on a condemnation award is addressed in Tenn. Code Ann. § 29-17-701 (2000), which provides as follows:

> (a) Whenever the state of Tennessee, its counties or municipalities, institutes a condemnation proceeding in any court, under the provisions of this chapter or chapter 16 of this title, to acquire any property or property rights, such condemner may deposit with the clerk of such court at the time of the filing of the petition such amount as it shall determine that the owner is entitled to and the owner may, if the owner so desires, make written request to the clerk to pay to the owner, without prejudice to any of the owner's rights, the sum so deposited with the clerk, and the clerk shall pay to the owner the sum so deposited; provided, that the owner agrees to refund the difference between such sum and the final award in the case if the final award be less than the sum so paid into court or that a judgment may be entered against the owner in such case for the difference.
>
> (b) Such payment to the property owner or into court shall in no way limit or fix the amount to be allowed under subsequent proceedings in such case, and *any further or additional sum that may be finally awarded in any subsequent proceedings shall bear interest from the*

> *date of the taking of possession of the property or property rights condemned by the condemner.*
>
> (c) In any subsequent judgment, *the judge shall include in the judgment, in addition to the principal, interest from the date of taking possession of the property to the date of the judgment; provided, that no interest shall be allowed on the amount deposited with the clerk.*

(Emphasis added). This statute clearly recites that a jury's award in excess of the deposit "*shall* bear interest from the date of the taking." *Id*. at subsection (b) (emphasis added). Subsection (c) also uses the mandatory "shall" in directing that "the judge *shall* include in the judgment, . . ., interest from the date of taking possession of the property to the date of the judgment." *See Safeco Ins. Co v. State*, 840 S.W.2d 355, 357 (Tenn. 1992) (reciting that the use of the word "shall" in a legislative enactment is mandatory).

Despite these clear statutory mandates, the County argues that the trial court has discretion to award pre-judgment interest. The County urges us to find that the disputes among the various property owners contributed to the delay in bringing this matter to trial and that this should have been considered by the trial court in deciding whether and in what amount pre-judgment interest was appropriate.

In support of its position, the County relies upon the cases of *Sullivan County v. Pope*, 448 S.W.2d 666 (Tenn. 1969) and *Knox County v. Moncier*, 455 S.W.2d 153 (Tenn. 1970). We do not find either of these cases on point. Both are inverse condemnation cases controlled by a different statutory scheme. Furthermore, when these cases were decided, they were resolved under a statute which did not then address pre-judgment interest in inverse condemnation cases. Simply stated, these cases have nothing to do with the facts of the instant case.

Even if we were to conclude that the ownership disputes delayed this case from proceeding to trial – and we are unprepared to make such a holding – we do not believe that a landowner's culpability in a condemnation case not proceeding to trial at a reasonably fast pace is material to the issue of pre-judgment interest. The award is to compensate the landowner for the time loss of his monetary interest in the property; it is mandatory under the statute.

III.

The trial court awarded the Trustees interest on the overage at the rate of 12.5% per annum from the date of taking – December 20, 1988 – to the date of the verdict, June 20, 2002. The computation of such interest is addressed in the applicable statute:

> All judgments rendered against a municipality, county or the state shall be paid out of the general funds of the municipality, county or state, whichever may be the condemner, together with interest at the

-5-

rate of two percentage points (2%) greater than the prime loan rate established, as of the date of the taking, by the federal reserve system of the United States on any excess of the amount awarded an owner over the amount deposited with the clerk.

Tenn. Code Ann. § 29-17-813(a) (2000). We find no error in this 12.5% award, being 2% greater than the undisputed prime loan rate at the time of taking, *i.e.*, 10.5%. On the contrary, we find that it is clearly called for when the applicable statute is applied to the facts of this case. We reject the County's invitation to compute the interest in other ways. As we said in an earlier case, we "must take statutes as [we] find them." ***Hamblen Cty. Educ. Ass'n v. Bd. of Educ.***, 892 S.W.2d 428, 432 (Tenn. Ct. App. 1994) (bracketing in original) (quoting ***Tennessee Mfr'd Hous. Ass'n v. Metro. Govt.***, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990)). This issue is found adverse to the County.

## IV.

Finally, the County argues that the trial court erred in decreeing that post-judgment interest would accrue on the judgment of $425,968.75 at the rate of 10%. The County argues that the judgment should accrue interest at a lesser rate predicated upon a computation under the pre-judgment interest statute applicable to condemnation cases, *i.e.*, Tenn. Code Ann. § 29-17-813, *based upon today's rates*. We disagree. Interest on *judgments* is controlled by Tenn. Code Ann. § 47-14-121 (2001), which provides as follows:

> Interest on judgments, including decrees, shall be computed at the effective rate of ten percent (10%) per annum, except as may be otherwise provided or permitted by statute; . . .

The accrual of interest on judgments is mandatory and is based upon the clear language of the statute. A trial court's decree confirming the statutory mandate is superfluous. It adds nothing to the effect of the statute; and a judgment accrues such interest whether it provides for interest or not.

The judgment in this case accrues post-judgment interest at the rate of 10% per annum from the date of the judgment, *i.e.*, August 16, 2002.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed against Sevier County. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE