IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 24, 2009

## METROPOLITAN GOVERNMENT OF NASHVILLE  v. JAMES E. BROWN ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 05-1246-I     Claudia Bonnyman, Chancellor**

---

**No. M2008-02495-COA-R3-CV - Filed December 30, 2009**

---

The matters at issue arise from the demolition of a dilapidated residential structure by the Metropolitan Government of Nashville and Davidson County. Following the demolition of the property, the Metropolitan Government filed this action to recover the cost of demolition. The homeowners, who purchased the property at a delinquent property tax sale after the Metropolitan Government had filed Notice of Violation with the Register of Deeds Office, but prior to the structure's demolition, responded by filing a counter-claim for inverse condemnation. The homeowners contended that the Metropolitan Government had no right to demolish their property and was not entitled to recover its costs for demolition, due to the intervening delinquent property tax sale. They also asserted in the counterclaim that the Metropolitan Government intentionally destroyed their property without the right to do so and, as a consequence, they are entitled to recover the value of the structure demolished. Both parties filed motions for summary judgment. The trial court ruled in favor of the homeowners on both motions by summarily dismissing the Metropolitan Government's claim for reimbursement and granting summary judgment to the homeowners on their inverse condemnation claim. The trial court then awarded the homeowners damages for the value of the structure and attorney's fees; however, the court denied their request for prejudgment interest. Both parties appeal. We affirm the summary dismissal of the Metropolitan Government's claim and the grant of summary judgment to the homeowners on their inverse condemnation claim. We also affirm the award of damages for the value of the structure and the amount of attorney's fees awarded to the homeowners. We reverse on the issue of prejudgment interest, finding that the award of prejudgment interest in inverse condemnation cases is mandatory under Tenn. Code Ann. § 29-17-813(a).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part; Reversed in Part; Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

James E. Brown, Madison, Tennessee, pro se.

Sue B. Cain, Lora Barkenbus Fox, and Jeff Campbell, for the appellee, Metropolitan Government of Nashville and Davidson County.

**OPINION**

The subject of this action, a dilapidated structure located at 2004 Third Avenue North in Nashville, Tennessee, was demolished at the direction of Metropolitan Government of Nashville and Davidson County on June 17, 2002. James Brown and his daughter Peony Brown, purchased the property at a delinquent tax sale on November 7, 2001 and were the owners of the property when the structure was demolished. However, the Browns did not own the property on September 29, 2001, when the Metropolitan Codes Department filed a Notice of Violation with the Davidson County Register of Deeds, or on October 25, 2001, when an Order of Demolition or Removal of Structure was filed, or when letters were sent to the previous owner advising of the impending demolition.

The genesis of the matters at issue occurred on September 29, 2001, when the Metropolitan Codes Department filed a Notice of Violation[1] with the Davidson County Register of Deeds regarding the condition of the structure pursuant to the Slum Clearance and Redevelopment Act, Tenn. Code Ann. § 13-21-101 *et seq*. The owner of the property at that time was listed as Ms. A.G. Demonbreun,[2] and she took no action in response to the Notice. On October 25, 2001, while she still owned the property, the Codes Department filed an Order of Demolition or Removal of Structure with the Davidson County Register of Deeds, which required the removal or demolition of the structure within 60 days following the order's receipt, otherwise, the Metropolitan Government had the right to remove the building, and the cost of removal would be filed as a lien against the real property. Again, the then owner took no action. Thereafter, the Department issued several letters and notices of impending demolition, which were mailed to Ms. Demonbreun. As before, no one responded to the notices or letters, and no one took action to remove the structure. As a consequence, the Metropolitan Government proceeded with the planned demolition by filing a Notice of Lien for the demolition costs on June 14, 2002, a copy of which was mailed to the owner of record, Ms. Demonbreun, and not the Browns, and three days later, on June 17, 2002, the structure was demolished and removed.

---

[1] The notice of codes violation listed the following problems with the structure: defective electrical and bath facilities, no hot water, heating system not provided, interior highly damaged, interior very unsanitary, unfit for human habitation, roof leaks, exterior highly deteriorating, windows and doors defective, some glass and screens out, and defective rafters.

[2] The record does not indicate whether Ms. Demonbreun was living at the time of the notices or whether she actually received any of the notices.

The Browns purchased the property at a delinquent tax sale[3] that occurred on November 7, 2001, which was after the filing of the Notice of Violation and the Order of Demolition.[4] The deed conveying the property to the Browns was recorded two months later, on January 10, 2002. Although the Browns purchased the property months before the demolition, it appears that the Metropolitan Codes Department was not aware the property had been sold, and it is undisputed that there were no efforts made to send notices or letters to the Browns advising of the impending demolition. In fact, the Browns did not learn of the demolition until they went to the property in late 2002.

In May 2005, Metro filed this action against the Browns to enforce the demolition lien and recover a judgment of $5,152.88 from the Browns. The Browns filed an answer denying liability stating that they had not received any notice of the impending demolition and that the tax sale nullified the effect of the Notice and Order of Demolition. They also asserted a counterclaim pursuant to Tenn. Code Ann. § 29-16-123 seeking just compensation for the willful demolition of the structure.[5] While the Browns' answer and counterclaim were filed pro se, they subsequently retained an attorney to represent them.

Both parties filed motions for summary judgment. In an order entered February 22, 2006, the trial court denied the Metropolitan Government's motion for summary judgment to enforce its lien. In the same order, the court granted summary judgment to the Browns and dismissed the Metropolitan Government's action upon the finding that "the lien was extinguished by the tax sale pursuant to Tenn. Code Ann. § 67-5-2504(b)." On July 25, 2007, the trial court issued a separate order clarifying its previous order and expressly granting summary judgment to the Browns on their counterclaim for just compensation.[6] As for their damages, the court found material issues of fact existed as to the amount of damages.

A hearing on the issue of damages was held on October 12, 2007, at which time both parties presented evidence as to the value of the demolished structure. Thereafter, the trial court found the value of the structure at the time of the structure's demolition in 2001 was $3,500 and awarded a judgment in that amount. Following the award of damages, the Browns filed a motion for attorney's fees. This motion was originally opposed by the Metropolitan Government due to the lack of documentation regarding the time spent by the attorney on the case. However, following the submission of documentation regarding his time, an Agreed Order was entered awarding attorney's fees in the amount of $5,882 in favor of the Browns.

---

[3]The Browns purchased the property for $1,500.

[4]Prior to the purchase, Mr. Brown made a "cursory inspection" of the property and the records on file. There is no indication of the date on which this occurred.

[5]Whether the Browns' claim for inverse condemnation was filed outside of the one-year statute of limitations, *see Knox County v. Moncier*, 455 S.W.2d 153 (Tenn. 1970), is not at issue as it was not plead as an affirmative defense as required by Tenn. R. Civ. P. 8.03, nor was it raised as an issue on appeal.

[6]This order followed several motions filed by the parties subsequent to the trial court's previous summary judgment order, including a Motion to Revise by Metro, and a hearing that occurred on July 13, 2007.

Throughout the litigation, and despite their representation by an able attorney, Mr. Brown repeatedly filed pro se motions. Following the entry of summary judgment and the award of damages in his favor, Mr. Brown filed a pro se motion seeking to vacate the award of damages and attorney's fees, and seeking an additional award of damages for the value of the demolished structure in the amount of $14,000, an additional award for attorney's fees, an additional $9,828 for "litigation costs," and $31,886.97 in prejudgment interest.

On October 10, 2008, the trial court issued a Final Order in which the court first noted that the record in this action was "confusing," due in part to the "Browns' pro se activity while they were represented by their lawyer."[7]  The court then denied the request for additional attorney's fees, finding that the Browns had not shown that "the payment in excess of $5,882 was for attorney time and effort reasonably and necessarily expended on this case." The court also denied the request for additional damages and denied the request for prejudgement interest. This appeal followed.

## ISSUES

Each party presents issues on appeal. The Metropolitan Government contends that the trial court erred in summarily dismissing its claim to recover the cost of demolition and removing its lien on the property, and in granting the Browns summary judgment on their inverse condemnation claim. For their issues, the Browns contend that the trial court erred by only awarding them $3,500 for the value of the demolished structure, which they contend was worth $16,500. They also contend that the trial court erred in denying their motion for prejudgment interest, in denying their motion to set aside the Agreed Order, in which they were awarded attorney's fees in the amount of $5,882, and by failing to award them the sum of $7,212 in attorney's fees. We will discuss the various issues in turn.

## ANALYSIS

The authority to demolish a dilapidated structure on private property is derived from the "Slum Clearance and Redevelopment Act." Tenn. Code Ann. § 13-21-101 *et seq.* The Act confers upon municipalities the power "to exercise its police powers to repair, close or demolish" structures which are

> unfit for human occupation or use due to dilapidation, defects increasing the hazards of fire, accident or other calamities, lack of ventilation, light or sanitary facilities, or due to other conditions rendering such structures unsafe or unsanitary, or dangerous or detrimental to the health, safety or morals, or otherwise inimical to the welfare of the residents of such municipality. . . .

Tenn. Code Ann. § 13-21-102(a).

---

[7] The Browns' attorney withdrew in July 2008, and the Browns have proceeded *pro se* thereafter.

The Act also provides that municipalities are to adopt ordinances "relating to the structures within the municipality which are unfit for human occupation or use," and that such ordinances *shall* contain certain provisions, which include provisions regarding the notice required to be given to property owners. Tenn. Code Ann. § 13-21-103.[8] The statute also provides the means in which service of the complaints or orders regarding the condition of the structure should be given:

> Complaints or orders issued by a public officer pursuant to an ordinance adopted under this part shall be served upon persons either personally or by registered mail, but if the whereabouts of such persons are unknown and the same cannot be ascertained by the public officer in the exercise of reasonable diligence, and the public officer shall make an affidavit to that effect, then the serving of such complaint or order upon such persons may be made by publishing the same once each week for two (2) consecutive weeks in a newspaper printed and published in the municipality, or in the absence of such newspaper, in one printed and published in the county and circulating in the municipality in which the structures are located. A copy of such complaint or order shall be posted in a conspicuous place on premises affected by the complaint or order. A copy of such complaint or order shall also be filed for record in the register's office of the county in which the structure is located, and *such filing of the complaint or order shall have the same force and effect as other lis pendens notices provided by law*.

Tenn. Code Ann. § 13-21-105 (emphasis added).

In compliance with the Act, Title 16 of the Metropolitan Code of Laws was enacted.[9] The pertinent provision within the Metropolitan Government's Code is §16.24.600, which states that:

> *Any complaint and order issued pursuant to this article shall be served upon owners and parties in interest either personally or by certified or registered mail, but if the whereabouts of any such person . . . cannot be ascertained by the director in the exercise of reasonable diligence*, and *the director shall make an affidavit to that effect*, then the serving of such complaint or order of such persons or entities may be made by publishing the same once each week for two consecutive weeks in a newspaper printed and published and in general circulation throughout the area of jurisdiction of the metropolitan government. A copy of such complaint or order shall be posted in a conspicuous place upon the dwelling or structure affected by such

---

[8] The statute requires that a complaint listing the basis for the finding that a structure is unfit for human occupation or use and setting the date for a hearing be served upon the property owner. Tenn. Code Ann. § 13-21-103(2). The owner then has the right to file an answer or appear at a hearing. Tenn. Code Ann. § 13-21-103(2)(A).

[9] Metropolitan Ordinance § 16.24.560 directs that the "department of codes and administration is hereby appointed to enforce this chapter and to implement the power conferred upon the Metropolitan Government by Tennessee Code Annotated, Title 13, Section 21 to exercise its police powers to repair, close, or demolish the aforementioned dwellings and structures in the manner herein provided."

complaint or order. A copy of such complaint and order shall be filed in the register's office of Davidson County, *and such filing of the complaint or order shall have the same force and effect as other lis pendens notices provided by law.*

Metropolitan Code § 16.24.600 (emphasis added).

The Metropolitan Government fully complied with the above requirements and obtained the requisite order in October of 2001 permitting it to demolish the dilapidated structure. Once the Order of Demolition was entered, the Metropolitan Government had the legal right to demolish the property and to recover the cost of demolition from the owner. However, for reasons not explained in the record, the property was not demolished until seven months later, on June 17, 2002. Nevertheless, in the interim, the various filings and recordings filed with the Register of Deeds Office and mandated by the Act and the Metropolitan Ordinance operated as a *lis pendens* notice, if not a lien.[10] Accordingly, anyone who acquired an interest in the property from the current owners thereafter did so with notice of the impending demolition.

The Browns, however, did not acquire their interest in the property from the previous owner. They acquired the property at a delinquent tax sale pursuant to Tennessee Code Annotated § 67-5-2501 *et seq*. Of further significance, the Browns purchased the property at the delinquent tax sale after the entry of the Order of Demolition but months before the demolition of the property by the Metropolitan Government.

The Browns contend the Notice of Violation, the Order of Demolition and the other various notices sent to the previous owner were nullified by the delinquent tax sale; thus, the Metropolitan Government had no right to demolish their property or to recover the cost of demolition. The authority upon which the Browns rely is Tenn. Code Ann. § 67-5-2504(b), which pertains to delinquent tax sales. It provides in pertinent part that "[a] tax deed of conveyance *shall be an assurance of perfect title to the purchaser of such land*," but for certain limited exceptions that do not pertain to this action.[11] Tenn. Code Ann. § 67-5-2504(b). Although this statute does not expressly

---

[10] A *lis pendens* filing with the Register of Deeds can be for the purpose of giving notice, to perfect or attach a lien for money owed, or both. In *LaQuire v. McCollum*, No. M1999-00926-COA-R10-CV, 2001 WL 177079, at *3 (Tenn. Ct. App. Feb. 23, 2001), the plaintiff filed suit for specific performance arising out of his purchase of a tract of real property when a survey revealed that the tract was significantly less than the size stated in the contract. The plaintiff also filed a *lis pendens* notice with the Register of Deeds. *Id*. The opinion in *LaQuire* reveals that the plaintiff filed what it described as a *lis pendens* notice "to inform potential purchasers that they claimed a lien on the property pending the outcome of the litigation." *Id*.; *see also Pehlman v. Pehlman*, No. 03A01-9809-CV-00311, 1999 WL 233514, at *2 (Tenn. Ct. App. April 15, 1999) (citing *Michigan v. United States*, 317 U.S. 338 (1943) (holding that it is generally held that the transfer of property subsequent to the attachment of a lien does not affect the lien)).

[11] The entire section of this statute reads:

"[a] tax deed of conveyance *shall be an assurance of perfect title to the purchaser of such land* and no such conveyance shall be invalidated in any court, except by proof that the land was not liable to

(continued...)

-6-

support the Browns' contentions, we find it persuasive. We also find that it is not the only significant provision in the relevant statutory scheme. Of further significance are two notice provisions mandated by Tenn. Code Ann. § 67-5-2502, which, if they were complied with by the municipality which conducted the delinquent tax sale, i.e., the Metropolitan Government, then the responsible agency, the Metropolitan Codes Department, would have been provided with notice that the property had been purchased by the Browns long before the structure was demolished.

The notice provision found in Tennessee Code Annotated § 67-5-2502(a)(1) requires that:

the property shall be advertised in one (1) sale notice, which notice shall set out the names of the owners of the different tracts or parcels of land and describe the property and set out the amount of judgment against each defendant. The description of the property shall include a concise description, that means a reference to a deed book and page that contains a complete legal description of the property, and may also include a common description of the property, which may include street name and number, map and parcel number, number of acres, or any other description which might help identify the property as it is commonly known. The purpose of the common description is to help identify the property that is described in the concise description. Any error or defect in the common description shall not in any way void any sale of the property; provided, that the concise description makes accurate reference to the last conveyance of the property by correct reference to a deed book and page.

Further, a subsequent provision of the statute, section (c), places the affirmative duty on the delinquent tax attorney to *identify* and *give notice* to persons having an interest in the property to be sold. Tenn. Code Ann. § 67-5-2502(c). The section provides:

*The delinquent tax attorney shall make a reasonable search of* the public records in the offices of the assessor of property, trustee, local office where wills are recorded, and *register of deeds and give notice to persons identified by the search as having an interest in the property to be sold*. The court shall set a reasonable fee for this service.

---

[11](...continued)
sale for taxes, or that the taxes for which the land was sold have been paid before the sale; and if any part of the taxes for which the land was sold is illegal or not chargeable against it, but a part is chargeable, that shall not affect the sale, nor invalidate the conveyance thereunder, unless it appears that before the sale the amount legally chargeable against the land was paid or tendered to the county trustee, and no other objection either in form or substance to the sale or the title thereunder shall avail in any controversy involving them.

Tenn. Code Ann. § 67-5-2504(b).

Tenn. Code Ann. § 67-5-2502(c) (emphasis added).

The Metropolitan Codes Department filed its Notice of Violation and the Order of Demolition with the Davidson County Register of Deeds prior to the delinquent property tax sale. Thus, the Metropolitan Government's *interest in the property* would have been ascertained by the delinquent tax attorney who conducted the mandated "reasonable search of the public records" on file with the Register of Deeds, and would have had the affirmative duty to notify the Metropolitan Codes Department of the impending sale.

The "perfect title" provision in Tennessee Code Annotated § 67-5-2504 provides that "[a] tax deed of conveyance *shall be an assurance of perfect title to the purchaser of such land.*" Tenn. Code Ann. § 67-5-2504(b) (emphasis added). Thus, the Browns were assured of "perfect title" when they purchased the property at the delinquent tax sale. Moreover, as a consequence of the two notice provisions in Tennessee Code Annotated § 67-5-2502(a)(1) and (c), the Metropolitan Government, specifically the Codes Department, knew or should have known that the Browns had purchased the property long before the structure was demolished.

For these reasons, we affirm the summary dismissal of the claim by the Metropolitan Government to recover the cost of demolition against the Browns.

### INVERSE CONDEMNATION

The trial court granted summary judgment to the Browns on their inverse condemnation claim brought pursuant to Tenn. Code Ann. § 29-16-123,[12] reserving the issue of damages for an evidentiary hearing. Following an evidentiary hearing concerning the disputed value of the structure, the trial court awarded the Browns $3,500 as just compensation for the value of the dilapidated structure. On appeal, the Metropolitan Government contends that the trial court erred in awarding $3,500 as the value of the structure.

"Inverse condemnation is the popular description of a cause of action against a governmental defendant to recover the value of the property which has been taken in fact by a governmental defendant even though no final exercise of the power of eminent domain has been attempted by the government." *Johnson v. Greeneville*, 435 S.W.2d 476, 478 (Tenn. 1968). "[I]n an inverse condemnation claim the plaintiffs must prove that the governmental defendant performed a

---

[12]The statute provides that:

> If . . . such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or the owner may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest.

Tenn. Code Ann. § 29-16-123(a).

purposeful or intentional act that resulted in damage to their real property to show that a taking has occurred." *Edwards v. Hallsdale-Powell Util. Dist.*, 115 S.W.3d 461, 467 (Tenn. 2003). It is undisputed that the Metropolitan Government purposefully and intentionally demolished the dilapidated structure and we have determined it was done without the authority to do so. Therefore, the grant of summary judgment to the Browns on their claim for inverse condemnation was proper. We will, therefore, turn our attention to the value of the structure demolished.

DAMAGES

Following an evidentiary hearing, the trial court determined the value of the structure was $3,500. This is a factual determination, and, thus we accord the trial court's finding a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Both parties contend, for various reasons, that the amount awarded in damages for the value of the demolished structure was error.[13]

"The court's objective in an eminent domain proceeding is to award just compensation for the taking to the landowner." *Sevier County v. Waters*, 126 S.W.3d 913, 915 (Tenn. Ct. App. 2003) (quoting *State ex rel. Comm'r v. Williams*, 828 S.W.2d 397, 400 (Tenn. Ct. App.1991)).

> The "just compensation" constitutionally required is the fair cash market value on the date of taking of the property for public use. The fair market value of the land is the price that a reasonable buyer would give if he were willing to, but did not have to, purchase and that a willing seller would take if he were willing to, but did not have to, sell. In determining what constitutes fair market value, the rule in Tennessee has long been stated to be that the jury must consider all capabilities of the property and all the legitimate uses for which it is available and reasonably adapted.

*Id.* (quoting *Nashville Housing Authority v. Cohen*, 541 S.W.2d 947, 950 (Tenn. 1976)). Our courts have held that tax assessment records may not be used to determine the value of property in just compensation cases. *See Wray v. Knoxville, LaFollette & Jellico Railroad Co.*, 82 S.W. 471 (Tenn. 1904); *West Tennessee Power and Light Co. v. Hughes*, 15 Tenn. App. 37 (Tenn. Ct. App. 1932); *see also Knoxville Cmty. Dev. Corp. v. Bailey*, No. E2004-01659- COA-R3-CV, 2005 WL 1457750 (Tenn. Ct. App. June 21, 2005).

---

[13] The Metropolitan Government contended, *inter alia*, that the Browns are not entitled to damages because the structure was in such disrepair as to constitute a nuisance, and thus the structure was of no value; therefore, the Browns are not entitled to any amount as "just compensation." In support of this argument, it cited *City of Nashville v. Weakley*, 95 S.W.2d 37, 38 (Tenn. 1936) for the proposition that if a property was in such disrepair as to constitute a nuisance then the owners are not entitled to just compensation. We, however, find *Weakley* distinguishable, because the property owner challenged an ordinance, which gave the municipality the right to demolish her property without notice. The court held that the property owner did not have authority to challenge the ordinance because the municipality, under the law existing in 1936, had the common law right to demolish condemned buildings deemed to be nuisances. Moreover, that case was about the *right* to demolish, not the value of the property. We, therefore, find the reliance on *Weakley* misplaced.

The foregoing authority notwithstanding, the Browns and the Metropolitan Government agreed, and represented to the trial court, that the damages would be determined based upon the applicable value established by the Assessor of Property.[14] What the parties did not agree upon, however, is which valuation applied to this case, specifically, which year applied and how to distinguish the "value of improvements" from the "value of land."

The structure was demolished in 2002. The Assessor of Property's valuation of the Browns' property on the date the structure was demolished was as follows:

Value of Improvement:  $3,500;
Value of Land:  $6,500;
Total value of property:  $10,000.

The Chancellor determined the value of the structure at the time of demolition was $3,500. We find no error with this determination. Accordingly, we affirm this determination.

## ATTORNEY'S FEES

The Browns challenge the award of attorney's fees in the amount of $5,882, contending they were entitled to more. Specifically they contend that they did not consent to the Agreed Order entered into by their then attorney and the Metropolitan Government, which settled their claim for attorney's fees in the amount of $5,882. We find no merit to their argument.

Near the conclusion of the case, the Browns, through their attorney, submitted a Motion for Attorney's Fees requesting $5,832.00. The Metropolitan Government objected to the amount on the grounds that it was entitled to a breakdown of the amount of time spent on the case, so that it could determine the reasonableness of the fees. Once the appropriate documentation was provided by the Browns' attorney, the parties entered into an agreed order awarding the Browns' attorney's fees of $5,882.00. Later on, following the withdrawal of their attorney, the Browns claimed that they were entitled to $7,212 in attorney's fees. The trial court denied the request finding that the Browns had failed to meet their burden to demonstrate that the amount awarded was inaccurate. Specifically, the court found that while the Browns demonstrated that they had paid their attorney in excess of the

_____

[14]The parties' agreement to use the appraised value to establish the value of the structure suggests the parties believed that Tenn. Code Ann. § 29-16-127 applied. Tenn. Code Ann. § 29-16-127 pertains to actions to recover damages when a governmental entity *accidentally* or *negligently* (as distinguished from *intentionally*) causes damage to an individual's property. Inverse condemnation action arises when a governmental entity performed a purposeful or intentional act that results in damage to a homeowner's property. *See Edwards v. Hallsdale-Powell Util. Dist.*, 115 S.W.3d 461, 467 (Tenn. 2003). Here, the Metropolitan Government purposefully demolished the Brown's structure; the act was neither accidental or negligent; nevertheless, neither party challenges the use of the property tax records to prove the value of the structure. The dispute concerns the trial court's interpretation of those records. The parties agreed to use this evidence to establish the Browns' damages and neither party raises the use of the property tax records on appeal. Accordingly, we have not discussed whether these records would have been competent evidence of the homeowner's damages in an inverse condemnation action, had one of the parties objected, and we make no ruling concerning whether Tenn. Code Ann. 29-16-127 applies in inverse condemnation actions.

amount awarded, they did not demonstrate that the payment "was for attorney time and effort reasonably and necessarily expended on this case especially given the fact some payment was made after all claims in the case had been heard and resolved, with the exception of court costs."

The Browns are entitled to attorney's fees pursuant to Tenn. Code Ann. § 29-16-123(b), which states that the court rendering a judgment for the plaintiff in an inverse condemnation proceeding

> shall determine and award or allow to such plaintiff, as a part of such judgment or settlement such sum as will in the opinion of the court, . . . reimburse such plaintiff for his reasonable costs, disbursements and expenses, *including reasonable attorney*, appraisal, and engineering *fees, actually incurred because of such proceeding.*

Tenn. Code Ann. § 29-16-123(b) (emphasis added).

In cases such as this, the trial court has no discretion regarding whether to award attorney's fees; however, the court has discretion to determine whether the amount of the attorney's fee requested is reasonable. *See Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990). The prevailing party has the burden to make out a prima facie claim for his request for reasonable attorney's fees. *See Keith v. Howerton*, 165 S.W.3d 248, 252 (Tenn. Ct. App. 2004); *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 535 (Tenn. Ct. App. 2002); *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988); *In re Estate of Perlberg*, 694 S.W.2d 304, 309 (Tenn. Ct. App. 1984).

In determining the reasonableness of an attorney's fee, the court must apply the factors enumerated in Rule 8, Tennessee Supreme Court Rules, which are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) whether the fee agreement is in writing.

Tenn. S.Ct. R. 8, RPC 1.5.

In most cases, it is not necessary for the party requesting the attorney's fees to call witnesses to testify to prove the reasonableness of the requested fees; this is because trial courts are capable of applying the relevant factors and deciding whether a requested fee is reasonable based on the court's knowledge of the case and the court's perception of the value of the services performed. *See Wilson Mgmt. Co.*, 745 S.W.2d at 873; *see also Preston Lincoln-Mercury, Inc. v. Kilgore*, 525 S.W.2d 155, 158 (Tenn. Ct. App. 1974). Instead of calling witnesses to testify at a hearing or by deposition, the prevailing party may present the affidavit of the lawyer or lawyers who performed the work. *See Hennessee v. Wood Group Enters., Inc.*, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991). A party opposing the request is to be afforded a fair opportunity to cross-examine the requesting party's lawyer and to present proof of its own. *Kahn v. Kahn*, 756 S.W.2d 685, 696 (Tenn.1988) (citing *Wilson Mgmt.*, 745 S.W.2d at 873); *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

The reasonableness of requested attorney's fees depends on the facts of each case. *Fell v. Rambo*, 36 S.W.3d 837, 853 (Tenn. Ct. App. 2000) (citing *Alexander v. Inman*, 903 S.W.2d 686, 695 (Tenn. Ct. App. 1995); *Hail v. Nashville Trust Co.*, 212 S.W.2d 51, 56 (Tenn. Ct. App. 1948)). Reasonableness determinations should be guided by the applicable factors. *See White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996); *Connors v. Connors*, 594 S.W.2d 672, 676-77 (Tenn. 1980). The time expended and the hourly rate charged are two of the many factors influencing the reasonableness of a particular fee. *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 136 (Tenn. 1986). Other factors include the nature of the services rendered, the novelty and difficulty of the issues involved, the skill required to perform the services properly, the results obtained, and the experience, skill, and reputation of the attorney performing the services. *Connors*, 594 S.W.2d at 676.

The Browns contend the trial court erred in denying their motion to set aside the agreed order and erred in failing to award additional fees. We find no merit with either contention because the Browns failed to prove that the attorney's fees paid in excess of $5,882 were *reasonable under the circumstances*. They merely proved that they paid the additional attorney's fees. The fact a party pays an attorney's fee does not establish that the fee was reasonable under the circumstances as required by Rule 8 of the Tennessee Supreme Court Rules.

Therefore, we affirm the decision to deny the Browns' motion to set aside the agreed order and affirm the award of attorney's fees in the amount of $5,882.

<u>PREJUDGMENT INTEREST</u>

The Browns also contend that the trial court erred in failing to award them prejudgment interest, contending prejudgment interest is mandatory in an inverse condemnation action. On this issue, the Browns are correct.

Our courts have held that prejudgment interest in an inverse condemnation action is mandatory. *Waters*, 126 S.W.3d at 916 (citing Tenn. Code Ann. § 29-17-701 (2001) ("In any

subsequent judgment, the judge shall include in the judgment, in addition to the principal, interest from the date of taking possession of the property to the date of the judgment; provided, that no interest shall be allowed on the amount deposited with the clerk.)).[15] In *Waters*, the court affirmed the use of Tenn. Code Ann. § 29-17-813(a) (2000) which states that:

> All judgments rendered against a municipality, county or the state shall be paid out of the general funds of the municipality, county or state, whichever may be the condemner, together with interest at the rate of two percentage points (2%) greater than the prime loan rate established, as of the date of the taking, by the federal reserve system of the United States on any excess of the amount awarded an owner over the amount deposited with the clerk.

*Waters*, 126 S.W.3d at 917.

Therefore, we remand this issue to the trial court for the limited purpose of determining the applicable rate of interest and to make an award of prejudgment interest pursuant to the authority that pertains to eminent domain actions.

### In Conclusion

The judgment of the trial court is affirmed in part, reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed equally against the appellant, James E. Brown, and the appellee, the Metropolitan Government.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[15] This provision was deleted by a 2006 Amendment to the Tennessee Code. However, a provision codified at Tenn. Code Ann. § 29-17-801(b) states:

> The payment into court shall in no way limit or fix the amount to be allowed under subsequent proceedings in such case, and any further or additional sum that may be finally awarded in any subsequent proceedings *shall bear interest from the date of the taking of possession of the property or property rights condemned by the condemnor.*