# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 15, 2011 Session

## MELODY JENNINGS BOWERS v. DANIEL R. BOWERS

**Direct Appeal from the Circuit Court for Davidson County**
**No. 07D-689     Carol Soloman, Judge**

---

**No. M2010-00311-COA-R3-CV - Filed April 7, 2011**

---

Alleging Husband's failure to pay child support and alimony as required, Wife filed petitions for contempt. The trial court found Husband guilty of seven counts of willful criminal contempt and entered a judgment against him for unmet obligations. On appeal, Husband claims the trial court erred in finding him in contempt, in imputing a $1,000 per month income to Wife, in upholding his work-related childcare obligation, in denying his counter-petition to modify spousal and child support, and in excluding certain witness testimony. He also argues that he was denied a hearing regarding Wife's attorney fees. Because the trial court failed to make a finding regarding Husband's ability to pay, we reverse Husband's criminal contempt conviction. Additionally, we find the trial court erred in upholding the work-related childcare award, and we remand for a determination of Husband's retroactive credit for amounts paid subsequent to the filing of his petition to modify and for a recalculation of his future support obligations. However, we find that the trial court did not err in imputing Mother's income, in refusing to allow Father's witness to testify, nor in awarding Wife her attorney fees without a hearing.

**Tenn. R. App. 3; Appeal as of Right; Judgment of the Circuit Court Reversed in Part and Remanded; Affirmed in Part**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Stephen Nunn, Nashville, Tennessee, for the appellant, Daniel R. Bowers

Gregory D. Smith, Nashville, Tennessee, for the appellee, Melody Jennings Bowers

**OPINION**

**I.  FACTS & PROCEDURAL HISTORY**


Melody Jennings Bowers ("Wife") and Daniel R. Bowers ("Husband") divorced in March 2008 after an approximate thirteen-year marriage.  They have two minor children.  At the time of the divorce, Husband was ordered to pay, beginning March 1, $2005 per month in child support, which included $789 for work-related child care, and $1500 in rehabilitative alimony "due and payable on the first day of each month . . . for a period of 36 months."  Husband's monthly gross income was shown on the child support worksheet as $7,000, and Wife's was shown as $2,000.

In May 2008, Wife filed a contempt petition alleging, among other things, that Husband was $4,515 in arrears in his child support and/or alimony obligation.[1]  In January 2009, Wife filed a supplemental contempt petition explaining that after her original petition was filed, Husband "met some of his outstanding obligations . . . and [therefore Wife] elected not to aggressively pursue [Husband] for the remaining unmet obligations."  However, she claimed that Husband's payments were late in April, May, September, October and November of 2008, that he paid no alimony or child support in December 2008, and that he paid no alimony and only one-half of his child support obligation in January 2009.  Husband then filed[2] a "Counter-Petition to Modify Custody, Child Support, and Visitation" alleging his income had decreased while Wife's had increased, and also arguing that his payment for work-related child care should be eliminated because Wife was staying home with the children.  In July 2009, Wife filed an amended supplemental contempt petition, alleging that of the $21,030 he owed in alimony and child support from February to July 2009, Husband had paid only $9,610.  Wife's amended petition alleged a total arrearage of $18,347.98 since the time of the parties' divorce.[3]

Following a two-day trial, the trial court entered an order on October 28, 2009, finding Husband guilty of six counts of willful criminal contempt for "failure to pay alimony and child support in a timely and complete manner in July (2 counts), August (2 counts) and September (2 counts) of 2009," and guilty "of one count of willful criminal contempt . . . for

_____

[1]Wife's petition notes that the checks she received failed to specify for which obligation Husband's payments were made.

[2]The document included in the record contains no file stamp, however the parties do not dispute its filing.

[3]Wife's amended petition further claimed that none of the payments was timely made. .

his failure to pay his share of the children's uncovered medical expenses incurred in July 2009." The trial court sentenced Husband to seventy days incarceration, with sixty-six days suspended "pending strict compliance . . . of all future alimony and child support obligations[.]" It further entered a $20,551.55 judgment against Husband for unpaid alimony, child support, medical and other expenses, it awarded Wife $23,360 for attorney fees and expenses, and it dismissed Husband's counter-petition finding no substantial and material change in circumstances to modify the parenting plan, nor any "legal or equitable reason" to modify Husband's alimony or child support obligations.

Husband filed a motion to alter or amend on November 25, 2009, based on the exclusion of witness testimony, his alleged inability to timely meet his obligations, and the award of attorney fees to Wife without a hearing. The trial court denied Husband's motion, and Husband timely appealed.

## II.   ISSUES PRESENTED

Husband presents the following issues for review:

1.      Whether the trial court erred in finding Husband in criminal contempt;

2.      Whether the trial court erred in imputing only $1,000 per month in income to Wife;

3.      Whether the trial court erred in upholding the work-related childcare award;

4.      Whether the trial court erred in failing to modify the alimony and child support obligations;

5.      Whether the trial court erred in denying Husband a hearing on attorney fees; and

6.      Whether the trial court erred in refusing to allow Father's witness to testify.

Additionally, Wife presents the following issue:

1.      Whether Wife should be awarded attorney fees on appeal.

For the following reasons, we reverse Husband's criminal contempt conviction. Because we find the trial court erred in upholding the work-related childcare award, we remand for a determination of Husband's retroactive credit for amounts paid subsequent to the filing of his petition to modify and for a recalculation of his future support obligations.

However, we find that the trial court did not err in imputing Mother's income, in refusing to allow Father's witness to testify, nor in awarding Wife her attorney fees without a hearing.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. **Tenn. R. App. P. 13(d) (2010)**; *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson,* 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond,* 521 S.W.2d 806, 808 (Tenn. 1975)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.,* 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. Contempt

On appeal, Husband identifies two bases for reversing the trial court's finding of criminal contempt: the trial court's order contains no finding regarding Husband's ability to pay and Husband was manifestly unable to timely meet his obligations. "An act of contempt is a wilful or intentional act that offends the court and its administration of justice." *Ahern v. Ahern*, 15 S.W.3d 73, 78-79 (Tenn. 2000) (citing Tenn. Code Ann. § 29-9-102; *Graham v. Williamson*, 164 S.W. 781, 782 (Tenn. 1914)). Tennessee Code Annotated section 29-9-102 authorizes courts to inflict punishments for contempts of court for the following:

(1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice.

(2) The willful misbehavior of any of the officers of said courts, in their official transactions.

(3) The willful disobedience or resistance of any officer of the said courts,

party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said courts.

(4) Abuse of, or unlawful interference with, the process or proceedings of the court.

(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them.

(6) Any other act or omission declared a contempt by law.

"Thus, to find contempt under this statute, a court must find the misbehavior, disobedience, resistance, or interference to be wilful." *Ahern*, 15 S.W.3d at 79. To find a party's failure to pay alimony and/or child support contemptuous, "the court first must determine that [the obligor] had the ability to pay at the time the support was due and then determine that the failure to pay was wilful." *Id.* Ability to pay may not be implied from a finding of willfulness. *See Martin v. Moats*, No. M2004-01921-COA-R3-CV, 2006 WL 2527641, at *2 (Tenn. Ct. App. Aug. 24, 2006). Instead, "willfulness and ability [to pay] are two distinct findings and [] both must be found in order to hold that a failure to pay [] is contemptuous." *Id.* (citing *Ahern*, 15 S.W.3d at 79; *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006)).

In response to Husband's argument otherwise, Wife contends that the trial court did make the requisite finding regarding Husband's ability to pay, citing the following statements made at trial:

> The Court: I find him willful.
>
> [Husband's counsel]: Before you even get to willfulness, though, if there's not an ability to pay - -
>
> The Court: He works. He presented witnesses who testified he's a tennis pro. You put them on.
>
> [Husband's counsel]: And the amount of money that he makes - -
>
> The Court: Is enough to pay the bills, his child support and his alimony. . . .

The trial court's order, however, makes findings regarding wilfulness only, and does not address Husband's ability to pay. "It is well settled that a trial court speaks through its orders." *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1997); *see also In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001) ("[T]he court speaks through its order,

not through the transcript."). Because the trial court's order fails to address Husband's ability to pay, we find that the trial court did not make the requisite determinations for a contempt conviction, and therefore we must reverse such conviction. We need not address Husband's arguments regarding manifest inability to pay.

### B. Wife's Income

As we stated above, at the time of the divorce, Wife's gross monthly income was set at $2,000. Husband contends that the trial court, in determining whether a modification of his child support obligation was warranted, erred in imputing an income of only $1,000 per month to Wife. Instead, Husband argues that Wife is underemployed, and therefore, that the trial court should have imputed to her an income of approximately $28,000 to $30,000 per year based upon her earning potential. Wife contends that the trial court appropriately utilized her $2,000 per month income in making its determination.

In dismissing Husband's counter-petition, the trial court stated only that "there are no substantial and material changes of circumstances which justify any modifications to the parenting plan arrangements in this case,[4] nor is there any legal or equitable reason to modify Mr. Bowers' alimony and/or child support obligations." The order does not address either party's income, and the trial court's statements at trial offer no insight as to the income utilized for Wife:

> [Husband's counsel]: We would like Your Honor to consider in our cross petition because of the change in his income which does meet the 15 percent - -
>
> The Court: It's over $10,000 to meet it. I've already figured it out.
>
> [Husband's counsel]: The calculation, as I ran, Your Honor, if you impute some income to [Wife], it does seem to meet that criteria.
>
> The Court: I'm not imputing it right now, because he's not paid her the money as a job to do the child care. She has $1,000 most of the time. When she starts working - - you know, even with her $1,000 is not half of the 15 percent.

From these statements, we cannot determine whether the trial court set Wife's income at $1,000 per month, refusing to impute to her the original $2,000 income, or whether it simply

---

[4]Husband does not appeal the trial court's refusal to modify the parenting plan arrangements.

refused to impute *additional* income beyond the $2,000 amount. Either way, we find the trial court did not err.

Just prior to the parties' divorce, Wife, who holds a bachelor's degree in early childhood education, was employed in commercial real estate earning $39,000 per year. Due to the economy, however, Wife lost her job. Shortly thereafter, Wife was offered a position working sixty hours per week, earning approximately $30,000 per year. According to Wife, the hours were inflexible and required third-party childcare. Because Husband was not meeting his child support obligations, Wife claims she would have "lost money" by taking the job. Thus, Wife did not accept the position but instead sought employment exclusively with Metro Nashville Public Schools, where her children are enrolled, while seeking to renew her teaching license and while preparing to enter graduate school to earn a Master of Arts teaching English Language Learners. Because Wife was not hired by Metro, in May 2009, she began cleaning houses, earning approximately $1,000 per month.

"The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support. Thus, the Guidelines set forth the method to be used by courts in determining the gross income of each parent." *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009) (citing Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)). Typically, gross income equals a parent's earning capacity or ability to support. *Id.* However, courts may "impute" income not actually earned when a parent is willfully or voluntarily underemployed "based on the premise that parents may not avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity." *Id.* (citing Tenn. Comp. R. & Regs. 1240-02-04-.03(a)2(i)(I)). "'The determination of whether a particular parent is willfully and voluntarily . . . underemployed is fact-dependent, and can only be made after consideration of all the circumstances surrounding that parent's past and present employment or business activities.'" *Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723, at *12 (Tenn. Ct. App. Sep. 18, 2007) (quoting *Ralston v. Ralston*, No. 01A01-9804-CV-00222, 1999 WL 562719, at *3 (Tenn. Ct. App. Aug. 3, 1999)). "The Guidelines do not presume that any parent is willfully and/or voluntarily under or unemployed. The purpose of the determination is to ascertain the reason for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children." **Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii)**.

Although in her current occupation Wife earns substantially less than she did just prior to the time of the divorce, we cannot say that Wife is willfully and voluntarily underemployed. Wife testified that during the twenty months since the parties' divorce, Husband timely paid his child support and alimony obligations only three times. Based on

the non-receipt of this money, Wife claims she was unable to contract for childcare, causing her to lose at least one job opportunity, and essentially forcing her to seek work from home or with a flexible schedule so that she could provide the childcare herself. The record reveals that Wife began cleaning houses only after her significant efforts to obtain a position with Metro Nashville Public Schools failed. Additionally, it shows that after Wife began cleaning houses, she continued to seek employment with Metro, she completed her CEUs to renew her teacher's license, and she was accepted into graduate school. Based on the evidence presented, we find Wife's occupational choice reasonable. Accordingly, we find that the trial court did not err in refusing to impute income beyond $2,000 per month to Wife, nor did it err if it reduced Wife's income to $1,000 per month.[5]

### C.    *Work-Related Childcare Award*

As set forth above, Husband's $2,005 monthly child support obligation included $789 for work-related childcare. Husband contends that because Wife, herself, rather than a third party, provided childcare, that he is entitled to a retroactive credit for all child support payments made, subject to documentation from Wife regarding third-party care. Wife admits that she cares for the children; however, she argues that she was forced to do so because Husband's failure to timely make child support payments left her without the money to hire a third-party caregiver, which, in turn, limited her employment opportunities. Terminating his work-related childcare obligation, she argues, would reward Husband for failing to comply with his child support obligation.

While we empathize with Wife, we are constrained to follow the law,[6] which, regarding the work-related child care award, provides as follows:

> If either parent or the non-parent caretaker is the provider of childcare services to the child for whom support is being determined, the value of those services *shall not* be added to the basic child support obligation when calculating the support award.

**Tenn. Comp. R. & Regs. 1240-02-04.04(c)(3)** (emphasis added). Because Wife is the

---

[5]On appeal, Wife does not argue that the trial court should have set her income at less than $2,000. Coupled with our finding that income beyond $2,000 should not be imputed to Wife, we find it unnecessary to set Wife's income at either $1,000 or $2,000 per month, as neither amount warrants reducing Husband's child support obligation.

[6]Administrative rules and regulations have "the force and effect of law in Tennessee." *Swift v. Campbell*, **159 S.W.3d 565, 572 (Tenn. Ct. App. 2004)** (citing *Kogan v. Tenn. Bd. Of Dentistry*, No. M2003-00291-COA-R3-CV, 2003 WL 23093863, at *5-6 (Tenn. Ct. App. Dec. 30, 2003)).

provider of childcare services, we find the trial court erred in upholding the work-related childcare award. Husband is entitled to a retroactive credit for amounts paid subsequent to the filing of his petition to modify, subject to any arrearage owed. We remand for such determination.

### D.    *Failure to Modify*

Based on his arguments regarding termination of the work-related childcare award and imputation of Wife's income, Husband contends that the trial court erred in denying his petition to reduce both his spousal[7] and child support[8] obligations.

Above, we rejected Husband's argument that income beyond $2,000 per month should be imputed to Wife. Thus, her income may not provide a substantial and material change in circumstances to *reduce* Husband's spousal support obligation. However, because the trial court erred in upholding the work-related childcare award, we must remand to the trial court for a recalculation of his support obligations.

### E.    *Attorney Fees at Trial*

At trial, Wife was awarded $23,360 for attorney fees and expenses "incurred in the prosecution of her contempt actions and the defense of [Husband's] counter petitions[.]" Before this Court, Husband argues that the award of attorney fees was error, as he was denied a hearing in which he could "cross examine and [] present evidence on the issue."

Pursuant to Tennessee Code Annotated section 36-5-103(c), a trial court may, in its discretion, award a reasonable attorney fee to a person who is required to return to court to enforce a spousal or child support order. Additionally, the parties' MDA, incorporated in the divorce decree, provides for an award of attorney fees to a party enforcing the agreement. "The award of attorneys' fees is within the trial court's discretion." ***Huntley v. Huntley***, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (citing *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997)). Therefore, unless it "'affirmatively appears that the trial court's

---

[7]An award of rehabilitative alimony is subject to modification based upon a showing of a substantial and material change in circumstances. **Tenn. Code Ann. § 36-5-121(e)(2)**.

[8] A child support order is modifiable based upon a showing of a significant variance, that is, "at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order[.]" **Tenn. Comp. R. & Regs. 1240-2-4-.05(2)(c)**.

decision was against logic or reasoning, and caused an injustice or injury to the party complaining,'" we will not reverse the trial court's decision on appeal. *Id.* (quoting *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999)).

Husband's motion for a hearing regarding attorney fees reads in its entirety as follows:

[Husband] herewith moves the Court for a hearing on the award of attorney fees in this cause and as grounds for this motion would show that the right to a hearing was granted by the Court at the time of trial.

The motion did not state why an award was inappropriate, and more importantly, it failed to set a date for the requested hearing. In his brief, Husband acknowledges that he never "formally set" the motion for a hearing, but he claims that his request for a hearing was "*de facto* denied by the trial court's denial of the motion to alter or amend."

We reject Husband's contention that he was denied the opportunity to cross examine witnesses or to present evidence regarding attorney fees. We note that Husband's motion acknowledges the court's willingness to conduct a hearing, and it is Husband who failed to take action to set the hearing. Our rules do not require that "relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." **Tenn. R. App. P. 36(a)**. The award of attorney fees is affirmed.

### F. Witness Exclusion

At trial, Husband attempted to call as a witness Deborah Denson, whom he describes as "a friend of [his] who has specialized expertise in accounting, including experience as a Chief Financial Officer, and who had specific knowledge of [his] personal accounts." However, because Husband's counsel admittedly sent Ms. Denson a transcript of the opening statements in the case, the trial court refused to allow her to testify.

On appeal, Husband argues that exclusion was improper because "the Rule," Tennessee Rule of Evidence 615, had not been invoked. However, he maintains that if the Rule had been invoked exclusion was, nonetheless, unnecessary as Ms. Denson never read the transcript and her testimony which related only to Husband's financial situation could not have been affected by opening statements.

Tennessee Rule of Evidence 615 provides in relevant part:

At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, *but in any event shall be effective before opening statements*. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness.

(emphasis added). The trial court has "wide discretion in determining whether to exclude a witness suspected of violating the Rule." ***State ex rel. Com'r of Dept. of Transp. v. Williams***, 828 S.W.2d 397, 401 (citing *State v. Moffett*, 729 S.W.2d 679 (Tenn. Crim. App. 1986); Paine, *Tennessee Law of Evidence* § 615.5 (1990)).

The parties disagree as to whether the Rule was invoked–Wife claims it was, Husband claims it was not. The transcript does not state that the Rule was in place when opening statements were made.[9] However, at trial, when Wife's counsel objected to Ms. Denson being called as a witness stating that "we had called the rule at the close of the case last week[,]" Husband's counsel responded only by claiming ignorance that opening statements could not be disclosed. Moreover, when the trial court stated that Ms. Denson would "not be allowed to testify under the rule[,]" and that "She was under the rule. . . . All this is under the rule[,]" Husband's counsel responded only by accepting blame for the disclosure error. Husband made no offer of proof regarding the testimony Ms. Denson would have provided, and his brief states only that her testimony "would have been useful in elaborating on [Husband's] financial situation."

Based on the record before us, including the trial court's finding that Husband lacked credibility,[10] it appears that the Rule was invoked in this case. Ms. Denson's receipt of opening statement transcripts violated the Rule. We find, regardless of whether Ms. Denson read the transcripts or whether her testimony could have been affected by such, that the trial did not abuse its "wide discretion" in disallowing her testimony.

---

[9]At the hearing on Husband's motion to alter or amend, the trial court stated that "I think there was a rule called. . . . And it was probably at the beginning before the proceeding started"

[10]In its order, the trial court stated "The Court further finds that [Husband] was not a credible witness in this trial and did not tell the truth to the Court while under oath."

### G. *Attorney Fees on Appeal*

Finally, we address Wife's request for appellate attorney fees pursuant to both Tennessee Code Annotated section 36-5-103 and the parties' divorce decree.[11] "An award of appellate attorney's fees is a matter within this Court's sound discretion." *Chaffin v. Ellis*, 211 S.W.3d 264, 294 (Tenn. Ct. App. 2006) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). When considering a request for attorney fees on appeal, we consider the requesting party's ability to pay such fees, his success on appeal, whether he sought the appeal in good faith, and any other equitable factors relevant in a given case. *Id.* (citing *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005)). Because each party was successful on some issues in this appeal, we find it equitable to decline to award attorney fees.

### IV. CONCLUSION

For the aforementioned reasons, we reverse Husband's criminal contempt conviction. Because we find the trial court erred in upholding the work-related childcare award, we remand for a determination of Husband's retroactive credit for amounts paid subsequent to the filing of his petition to modify and for a recalculation of his future support obligations. However, we find that the trial court did not err in imputing Mother's income, in refusing to allow Father's witness to testify, nor in awarding Wife her attorney fees without a hearing. Costs of this appeal are taxed equally to Appellant, Daniel R. Bowers, and his surety, and to Appellee, Melody Jennings Bowers, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[11] We note that the divorce decree provides for attorney fees "incurred in prosecuting or defending" an action "to procure enforcement of any of [its] provisions[.]" It does not speak directly to appeals.